Welcome to the Fourth Circuit. Judge Thacker and I are quite pleased to have joining us on the bench this morning Judge Mark Davis from the Eastern District of Virginia. Welcome, Judge. We'll hear our first case, number 12-1722, Dean Baldwin v. City of Greensboro. Counsel whenever you're ready. May it please the Court, Your Honor. I'm Greg Cash. I represent the Plaintiff Appellant Chief Warrant Officer, Dean Baldwin, in these claims. Mr. Baldwin brought claims under USERRA, which is the Uniformed Services Employment and Reemployment Rights Act of 1994 in the Middle District of North Carolina. His claims were ultimately dismissed by the Middle District, finding that his claims were barred by the four-year statute of limitations found in 28 U.S.C. section 1658. It's our position, Your Honors, that the trial court erred in three different ways, Your Honor. First, Your Honor, we contend that section 1658 should not apply to Mr. Baldwin's claims under USERRA that, in fact, Congress displayed its intent that section 1658 not apply by the Veterans Benefits Improvement Act, which was enacted in October of 2008. We also contend, Your Honor, that alternatively that Mr. Baldwin's claims under USERRA fit into the, as otherwise provided by law, exception found specifically within section 1658. We also contend, Your Honor, that as a matter of law, Mr. Baldwin should have his claims told for the pendency of, during specific portions of the pendency of his claim for reasons of his active-duty employment or active-duty military involvement, for reasons of the time period in which his claims were investigated by the Department of Labor, which are specifically the excludable time under USERRA, and, for what we contend, was fraud procured on the DOL by the city. Before I discuss the specifics of Mr. Baldwin's case, I would like to make one point clear, and I also like to apologize to the Court for my voice. I have a head and chest cold right now, so I apologize about how I may sound to you. I'm sure this Court is aware that the Supreme Court and Fourth Circuit have repeatedly held that legislation for the prevention of veteran employment discrimination, such as USERRA, is to be liberally construed in favor of the benefit of the veteran. I would suggest to the Court that that liberal construction for the benefit of the veteran would also apply to any interpretation of any statute that could curtail the veteran's rights under USERRA, such as 1658. Are you suggesting that a statute of limitations is a curtailment of a right? It precludes his right, his claim. That strikes me as a rather odd conception of a statute of limitations. To the extent that it precludes him from bringing his claim forward, it acts as a bar to his claim, I would suggest to the Court, if it follows the Hill line of reasoning, and the reasoning of Coffee v. Republic Steel Corporation, that the Court must look at this liberally in Mr. Baldwin's benefit, for Mr. Baldwin's benefit. So liberally that we would construe the VBIA retroactively? That is one way the Court could look at this, Your Honor. I believe my position is the Court, there are a number of factors. I think when you look at the case overall in the legislative history of veterans' benefits, employment and re-employment rights cases, I think Congress has displayed an intent from the very inception to the present to strengthen those claims, to protect our service members, because we need those service members. How do we get to looking at the legislative history if the statute is clear? I contend it is not clear, Your Honor. For what reason? I would note that there are a number of cases I recognize that are against Mr. Baldwin, that have been cited by counsel. I would suggest to the Court that the Middleton case and its progeny, there are a number of cases, miss the point of Jones versus R.R. Donnelly. In the Middleton court, at least according to the defendant's brief, found section 1658 to not be ambiguous. I would suggest, Your Honors, that if the Court reads Jones fully, Jones says, specifically, the Court noted that the arising under language of section 1658 was ambiguous, and therefore it required the Court to examine Congress' intent, which must be ascertained by looking beyond the section's bare text to the context in which it was enacted and the purpose it was designed to accomplish. The Jones court went on to note that the primary purpose of section 1658 was to address the clogged courts that were filled with state statute limitations, borrowing cases, that arose under employment law discrimination cases and other cases, that were clogging the courts. That was the primary purpose, according to Jones, with which section 1658 would apply. And the Jones court actually was analyzing the section 1658 and its application to a 1981 claim. That is a claim that had traditionally relied on borrowing statutes to determine the statute of limitations. But if you take the Jones court at their face and when they state they find the statute to be ambiguous and therefore you must look at Congress' intent, which must be ascertained by looking beyond the section's bare text to the context in which it was enacted and the purpose it was designed to accomplish, a number of things jump out, Your Honors. First off, the VRA, Veterans Reemployment Rights Act, and USERA were actions that Congress had all along, I'm sorry, let me back up to make it clear. Prior to December 1, 1990, there had never been a Veterans Employment and Reemployment Rights Act case which had a statute of limitations. The predecessor legislation, the VRRA, had, in fact, in state courts, states had applied state statute of limitations. Congress displayed its intent that no statute of limitations be applied by enacting the VRRA, which specifically said no state statute of limitations. That was at a time when there were no federal statute of limitations that applied to those claims. The... Assuming all of your argument is, assuming I agree with all that you're saying, that Congress didn't want a statute of limitations to apply, and so we need to look at the legislative history, Congress could have clearly put in the legislative history or in the statute itself that the amendments were to apply retroactively, and they didn't. Your Honor, they did not in the statute itself. I would contend that Congress's intent in this area of law has been displayed consistently throughout the course of the different enactments. That is, the VRRA was enacted to prevent states from using the statute of limitations. USERA, and it was at a time when there was no federal statute of limitations, USERA kept that same statutory language, no state statute of limitations. It didn't say, and I grant you, it didn't say in USERA that no federal statute of limitations should apply, because they pulled the same language from the VRRA. But what I would suggest to the Court is it appears to me that it would reach an absurd result to say that USERA was intended to create a statute of limitations defense for USERA defendants, because the language used in USERA, that is Congress's enactment, was that USERA was enacted, and this is, part of it is found in the House report in the enactment of USERA. The House report indicates that USERA was enacted to clarify, simplify, and where necessary, strengthen existing veterans employment and re-employment rights cases. How do we get there, Counsel, if you're suggesting that the absence of any language addressing a federal statute of limitations creates an ambiguity, if I understand? Yes, Your Honor. So, the mere fact that it doesn't address something, all by itself creates the ambiguity, allows you to look to legislative history? Yes, Your Honor. Okay. It sounds like a novel position to me to suggest that we can read into Congress, the silence of Congress on an issue, ambiguity. I don't think Congress has been ambiguous about its intent that USERA should be that Veterans Employment and Re-employment Rights Act cases have no statute of limitations. I think the VBIA says specifically, we did not intend, and this is, granted, Your Honor, it's in the legislative history, we did not intend that there be any statute of limitations that apply to these claims. I think that's clear from the history of those cases as well. I don't think you have to take a great leaf of faith to apply the VBIA retroactively for several reasons, Your Honor. What's your best argument for retroactive application? My best argument? Well, there are several, Your Honor. My best, I would say... Your best. Most persuasive. I'm trying to read your mind, Your Honor. My wife's been trying to do that for years. It doesn't work. Your Honor, I think... Although she thinks it does. I think the strongest argument that there is, is that Section 1658 was read by the courts and that there was differing opinions by the courts until the DOL issued its USERA annual report, the 2006 report, but they didn't get it to Congress until February of 2008. Congress, in eight months, enacted the VBIA, which clarified their position that no statute of limitations should be applied to this. I think that speaks to Congressional intent as much as anything, Your Honor. And what's your explanation for Congress's failure to make that explicit in the statute? I have no explanation other than to note that Congress, I think, can display their intent in a number of different ways, and I think they chose to do it through the legislative history. Thank you. You've reserved some time, Mr. Cash. Yes, Your Honor. Thank you very much. Mr. Wilson? May it please the Court, my name is Gray Wilson, appearing on behalf of the Appellees in this matter. Statutes of limitation are inflexible and unyielding, they're not creatures of equity, and they apply to our armed forces as well as civilians. And the four-year statute of limitations in this case, section 1658, is the one we contend, and the Court below agreed, bars the USERRA claim asserted by the plaintiff in this matter. And that claim was barred prior to the time that the VBIA was enacted, about seven months later after that, in October of 2008. The plaintiff left the city in January of 2003, so it's over six years later that this lawsuit was filed. Of course, we have contended and submitted in our record that he knew, as early as August of 2002, that his rights as an employee, who could be called up by the military, were infringed when harassment, he contends, was commenced by a co-worker. And his first act was to file a claim with the Department of Labor, and that was almost four years later. It was one month shy of that, of the four-year statute of limitations in section 1658. That was closed at his request a year later, and it was closed because the Department had informed him that he didn't have a claim on another ground. It was based on a releasing to execute. He reopened it for one month, a year and nine months later, in December of 2008, and then again at his request withdrew his claim with the Department of Labor, and nine months later filed the instant action, which was over a year after the VBIA was enacted. So, by March of 2008, not counting the time he was on active duty, and had his pending Department of Labor claims, his case had already aged four years, and that was months, again, before the VBIA was enacted. Now, we have cited in our brief the cases which are legion we submit in support of our position. There are five district courts and one circuit court have held that this section 1658 applies to USARA claims. And the same circuit, the seventh circuit, as well as an additional circuit, the sixth, and four other district courts have also specifically held, and it's of recent vintage, that section 1658 applies to claims that expired before the VBIA was enacted, but were filed after its enactment, which is the case here. The only contrary case that we could find was out of the Eastern District of Tennessee, and that was a case that preceded the Jones case, which my colleague has already brought to the attention of the court. And while that case does clarify the law with regard to section 1658, again, the seminal case for that is Landgraf, almost a decade earlier, more than a decade earlier, in which the court set up the retroactivity analysis, which has been applied with regard to section 1658 and otherwise ever since for the past 20 years. This would be sort of super retroactivity, wouldn't it? Because it would revive a claim that was clearly barred. Yes, sir, that is the case. And I guess the statutes of limitations curtail rights. Well, I don't know if I would engage in sabbatics with regard to that, except to say that at some point statutes of limitations allow claims to judicially die, and once dead, they cannot be resurrected. You cannot breathe new life into it. And under the Landgraf analysis, the court's questions earlier were, well, first, does the statute itself, does the VBIA say whether or not it will have retroactive application? It doesn't. And so you go to the second part of the Landgraf analysis, which is then does the application of retroactivity, does it in some manner infringe settled expectations? And certainly we say that's the case here because USERRA, after the VRRA was enacted a couple of decades earlier, grafted new rights in several respects, and that was by allowing one to bring a claim where instead of the sole motivating factor, just a motivating factor was the plaintiff's military status. Would the analysis be any different? I'm just curious if this case had been pending on appeal when the statute took effect. No, sir, I don't think the analysis would be any different. It wouldn't be any different. It's either dead or alive. Well, I guess what I'm nibbling at is the notion that a court applies the law in existence at the time it makes its decision. And so had this case been pending on appeal, would we have been obliged to give effect in that limited retroactive way to a direct appeal, case on direct appeal? Right. I would still say under the Landgraf analysis, no, because you have the same settled expectations. You also have the right to a jury trial and the right to liquidate under double damages that were added after Section 1658 was enacted. So finally, under Landgraf, you have the recourse to legislative history. And to my knowledge, the only legislative history that was noted, especially in the Middleton case, which is probably our best case, I believe from the circuit court, is that like the old statute, the RRA, that state statute of limitations would not have any role with regard to any of these statutes because the federal jurisprudence had developed at this case for borrowing. But that was the extent of their comment on it. So that being the case with that silence, I think the Landgraf test is not meant for retroactivity. And therefore, the statute of limitations did intervene in this case, and it should be affirmed by this court. And again, the only contrary case we found was the one from the Eastern District, the Octory case, which in that same district, with the benefit of Jones, at a later date the Wagner case found that the law was in fact that of these legion of circuits and district courts that we have already referred to in our brief and here today. And the Roark case, I believe that's from a separate district in Tennessee, but at this point in time it seems that Tennessee and the Sixth Circuit are fairly well in line with regard to the consonance of applying Section 1658 to the facts of this case with regard to the expiration of the plaintiff's claim. Has your research shown how many cases fall into this category that are in this sort of neverland, if I can call it that? I would imagine that there aren't that many. Well, apparently not, because I would hope our research was exhaustive enough to have covered all the reported cases. And I'm thinking Octory may not even have been a published case, but in any event, all the cases in the federal jurisprudence, I think we have those in one form or another in our brief. And if we haven't, I'm confident my colleague did in his own. So, again, with the retroactivity analysis, we say that Landgraf finds squarely with these other courts, including the Fourth Circuit, that that analysis is not met and the statute of limitations has intervened. There's simply no evidence that the BBI was intended by Congress to be retroactive, and liberal construction of a statute does not trump or overrule the Landgraf analysis, in our opinion. There's simply no ambiguity there in either statute to be quibbled with. There is an argument of equitable tolling as well that my colleague may address by way of response, just to anticipate that we have not attempted to count the time while the separate claims before the Department of Labor were pending against the plaintiff under the statute. We do contend that there's no law that would support tolling for the time between those two claims, each of which was withdrawn at the plaintiff's request, and that there's no rhyme or reason for that to occur. The plaintiff is seeking a tolling, I think, from 2006 through 2009, which would encompass the time from the filing of the first claim to a withdrawal and the second claim. But there was about a two-year period there in between when the file was closed at the plaintiff's request. And, again, that was because the Department of Labor told him that they didn't think he had a claim based on the release he had executed, which is not relevant to their argument that somehow a statement was made by the defendant in response to that claim which should equitably toll the statute of limitations. The statement in the record before the court simply noted that he was not recalled to active duty until January of 2003. That is correct. Now, he was certainly telling people as early as six months before that he thought he would be called up, but that didn't happen. His order didn't get cut until January 23, or maybe 2003. And so it's our position that that statement was accurate and there wasn't any kind of misrepresentation that would warrant an argument of tolling, especially when the Department of Labor was unimpressed by that statement and found on different grounds that there was really no claim. They decided he had no case and he had the right then to pursue litigation, which he did. But in the meantime, the statute of limitations had intervened. If the court has further questions, I'll be happy to answer them. Thank you very much, Mr. Wilk. Mr. Cash, you have some time left. Your Honor, I stand here. I recognize that the vast majority of the cases that have looked at whether or not Section 1658 should apply to claims brought under USERRA are vastly against us. I suggest to the court, though, that the factors that the court should consider when they evaluate this is first examine USERRA's stated reasons for enactment. And those actually, both in the legislative history and within the statute itself, USERRA was enacted to strengthen and improve veterans' employment and reemployment rights statutes. Again, my position is that it's, I think, it reaches an absurd result to say that this legislation, by its enactment, creates a statute of limitations defense when the statute was, in fact, drafted to strengthen those claims of the veterans. If you perform the analysis under Jones, Your Honor, secondly, I ask that you consider that Section 1658 was enacted primarily to address borrowing statutes and the excess claims that were in these courts, not the type of legislation that Mr. Baldwin's claims fall under, not veterans' reemployment rights claims, which Congress had consistently held such claims shouldn't be subject to a statute of limitations. Third, prior to the VBIA amendments, ambiguity did exist as to whether or not these cases, that is, the veterans' reemployment rights cases, should be applied to USERRA. And Congress, when finding out about that, by and through the Department of Labor's 2006 annual USERRA report that was delivered to Congress in February 2008, Congress responded promptly. And they did so, I would suggest the Court showing their intent that no such statute of limitations were intended to be applied to USERRA claims by the USERRA's enactment. This Court, Your Honor, has said that clarifying legislation relates back to the statute and the enactment of the statute and creates no due process problem. This Court has noted that when an amendment alters, even significantly alters, the original statutory language, this does not necessarily indicate the amendment constitutes a change in the law. It's our position, Your Honor, is that, and this Court has also said, and this is the Brown case, an amendment to a statute does not necessarily indicate the previous version was the opposite of the amended version. I would suggest that the legislative history of veterans' employment and reemployment statutes through the VRA, through USERRA, and through the VBIA are consistent in their efforts to expand veterans' employment and reemployment rights claims. They are consistent, but also based upon Congress' stated intent in the VBIA, coupled with Congress' actions to correct a misapprehension about the effects of USERRA, I would suggest this Court has the ability to affect Congress' intent when USERRA was enacted and put into play and that their intent, as displayed by the VBIA, was that these type of claims should not be subject to a statute of limitations defense. I would suggest the Court, if the Court considers these type of claims broadly, as this Court and the Supreme Court has suggested veterans' benefits claims be evaluated, I suggest that this Court is compelled to find that it was never Congress' intent to apply a statute of limitations to USERRA legislation. Excuse me. Your Honors, that's all I have, unless the Court has any further questions. Thank you very much, Mr. Cash. I appreciate your presentations. We'll come down at Greek Council.
judges: Andre M. Davis, Stephanie D. Thacker, Mark S. Davis